## Case No. 18,203.

### The ZARALLA.

[Blatchf. Pr. Cas. 173.] [1]

District Court, S. D. New York. May 30, 1862.

CONDEMNATION OF PRIZE—EVIDENCE—SPOLIATION OF PAPERS—DECREE BY DEFAULT.

1. The vessel was destroyed by her captors because unfit to be sent in for adjudication. The cargo was sent in. *Held*, that the court had judicial cognizance of the capture of the vessel without having her within its territorial jurisdiction.

2. The crew of the vessel were, at their request, put on shore by the captors, and no person on board of her at her capture was sent in for examination. On special leave of the court, witnesses from the capturing vessel were examined.

3. The rule that the testimony for the condemnation of the prize must be obtained direct-

1 [Reported by Samuel Blatchford, Esq.]

ly from documents or witnesses found on board of her at the time of her seizure is always adhered to, unless satisfactory reasons are shown for its non-observance.

4. The court, during the present war, always regards, by force of the standing prize rules, a decree by default, regularly obtained, as equivalent to an admission on the record of the offence charged in the libel.

5. Spoliation of papers not explained by satisfactory proof.

6. Vessel and cargo condemned as enemy property, and for a violation of the blockade.

In admiralty.

BETTS, District Judge. This vessel and cargo were captured, September 30, 1861, by the United States steamer Huntsville, in Atchafalaya Bay, an outlet of Berwick Bay, Louisiana. The vessel, valued at $1,000, being adjudged by the United States naval officer in command at the capture, unfit to be sent to a Northern port for adjudication, was destroyed by his orders, and the cargo was transmitted to this port, and here arrested by due process of law in this suit. None of the crew of the prize were produced for examination in preparatorio at this port. They were landed on the coast at their request by the captors, and immediately departed from the custody of the captors. On motion of the United States attorney, an order was granted by the court to take the examination of witnesses present at the capture, and who were produced from the capturing vessel. The supposed specialties in the proceedings in this case are, that the vessel prosecuted as prize was not brought into port, nor were any individuals of her crew produced to be examined as witnesses.

This court has judicial cognizance of the capture, without at the time having the prize within its territorial jurisdiction, and without its being brought there during the pendency of the suit. Jecker v. Montgomery, 13 How. [54 U. S.] 498, 18 How. [59 U. S.] 110. Accordingly, no more irregularity or imperfection exists in acting upon the appropriation of the prize by the government, either in destroying it or converting it directly to public use, than if it had been placed bodily under the jurisdiction of the court by process issued against it.

The other informality suggested, of not having testimony for the condemnation of the prize, obtained directly from documents or witnesses found on board of the vessel at the time of her seizure, is a departure from a rule of practice which the prize court always expects will be honestly adhered to, unless satisfactory reasons are shown for its non-observance. The Anna, 5 C. Rob. Adm. 373. It is clear that the rule cannot be absolute and peremptory. The crew of the prize may all of them be killed or escape in the act of capture, or the ship's papers may be destroyed or effectually concealed, in a flagrant attempt to violate a blockade by force, or to commit some other offence subjecting the

prize to forfeiture by the law of nations. In like instances the court would be governed by the palpable merits of the case, and not sacrifice clear right to formalities of practice. In the matter of Proceeds of Prizes of War [Case No. 11,440].

The court, during the present war, always regards, by force of the standing prize rules, a decree by default, regularly obtained, as equivalent to an admission, on the record, of the offence charged in the libel. The vessel here was apprehended in the effort to evade a blockade, the existence of whch the master knew, as he admitted to the witness, and which he had before violated. The papers found on the vessel show that the vessel and cargo belong to an enemy port; and the master was seen to tear up and throw overboard papers as the capturing vessel approached the prize to seize her. No appearance has been made in the case, nor has any claim been filed against the libel, and the marshal returned to the monition that the prize had been attached; and that due notice has been given to all persons claiming the same. The facts of the destruction or spoliation of papers on board, not explained by satisfactory proof, and also the enemy property of the prize, supply legal causes for its condemnation and forfeiture. Jecker v. Montgomery, 18 How. [59 U. S.] 110; Wheat. Mar. Capt. 101; The Pizarro, 2 Wheat. [15 U. S.] 227; The Adriana, 1 C. Rob. Adm. 313; The Two Brothers, Id. 131. Judgment ordered, condemning the vessel and cargo as enemy property, and also for a violation of the blockade of the port from which the vessel was attempting to escape.